Good morning, Your Honors. May it please the Court, Jane McClellan appearing on behalf of the appellant, Kody Garrett Houk, and I would like to note that I would like to reserve two minutes for rebuttal. Mr. Houk was subject to custodial interrogation. He was not advised of his Miranda rights, and thus it is our position that his statement was not admissible. We would ask that this Court reverse the district court's ruling that the statement was not in violation of Miranda, that it be remanded, and that the defendant can withdraw from his guilty plea if he so chooses. Of course, the issue here is whether Mr. Houk was in custody. Was he deprived of his freedom of action in a significant way? To put it another way, would a reasonable person in Mr. Houk's same circumstances conclude that he was free to leave? Now, the government will argue that he was told that he was free to leave, that he was there voluntarily, that he was not handcuffed, and he was not arrested afterward. But I would submit in this case, like almost all the cases cited by the parties, this is always the situation. If he had been handcuffed, if he had been told he was under arrest, if he had been told he was not free to leave, clearly then the agent would have had to advise him of his Miranda rights. There's also the place at which the questioning takes place, which is an ordinary meeting room in a building where he comes regularly. It's not the police station or an unfamiliar place. Does that play into it as well? That is one of the factors that the Court should look at. There are five factors that the Court should consider, but it is the totality of the circumstances test. The government has argued that this was a familiar place, but we submit that there's no evidence that Mr. Houck worked regularly at this facility. He worked for a contract carrier. He only went to this facility to pick up mail and then went out on his route and delivered the mail. There's no evidence that he had ever been in this conference room before, no evidence that he knew other employees in this building. Well, whether he'd been there or not is only part of the question. It's a conference room in a business location where you have at least been previously and you have come on your own hook is much less intimidating than being told to report to headquarters somewhere or to go to a police station. Wouldn't that be one way to look at it? That's true, Your Honor, but there are other cases where a defendant was questioned at his home, as in the Brobst case and the Craighead case, and even though it was at the home, which of course is the most familiar place of all, they still found that it was a custodial setting. In the Kim case, the defendant was questioned at her place of business. In the Carter case, which was in fact very similar to the case here, the bank employee was questioned by the postal inspectors in the bank president's office, and they found that it was a custodial environment. Here, the door was closed. There were two agents present who were questioning him. The language that was used to summons Mr. Haut tends to show that he was in custody. He had done his route for the day. He was about to leave, probably to go home, and he is confronted by Special Agent Cahill, who said, I'm a special agent with the Office of the Inspector General, and I would like to speak with you. He had the door open to his car and, as I said, was about to leave, but he was not allowed to leave. Another postal inspector joined them, and they said, would you mind coming back with us to the post office? Although they were very polite, this clearly would be interpreted by a reasonable person as a command, that he had no choice but to go back to the post office and speak with them. At that time, they did not say to him, if you don't want to come with us, you don't have to come with us. There's no evidence that that was what was said. They merely said, please come back and speak with us. Once they went back to the post office, they did say they wanted to talk to him about missing mail, asked him a few personal questions, and then immediately asked if he would sign a consent to search the vehicle. He hesitated because it was his mother's vehicle, and most likely he was afraid of getting in trouble for agreeing to have his mother's car searched. And one of the agents turned to the other agent and said, we couldn't pound the car. After saying that, then Mr. Houck agreed to sign the consent to search. He was given the impression that he had no choice at that point but to sign the consent to search, or they were going to take the vehicle. Then he would not have a way home. He would have to explain to his mother why they had taken his car. When they go back to the parking lot, then they go through his vehicle and find some things that appeared to be stolen. The evidence is that he was not given a choice about whether to go with them out to the parking lot and then back into the post office. He was told to accompany them. He watched them going through the vehicle. Then they go back into the conference room. At this point, it becomes perhaps even more custodial because they are confronting him now with this evidence of guilt. They have been escorting him back and forth, and the pressure has increased at this point. He was not advised of his right to talk to an attorney, and he was never at any point told that he could talk to anyone, not offered the opportunity, for instance, to call a friend or family member. Was there any testimony about what they said to him when they took him out to the car with the search or when they brought him back inside? No. I don't believe there was any testimony about that. The only testimony that I recall is that one of the agents stood by him as the other agent, I believe Agent Cahill, went through the vehicle and seized some of the goods. At what point do you contend that he was taken into custody at what point in this whole scenario? Your Honor, I would say that he was taken into custody when he was taken initially into the conference room. But alternatively, you could find that he was taken into custody after they had done the search of the vehicle. He did not answer any substantive questions until the second time in the conference room. And initially he denied his involvement, said that he gave excuses for why the mail looked like it had been gone through. But then with pressuring by the agents, he finally did admit that he had stolen the We also think that the Court should consider the defendant's age. He was 19 years old. And in the Baran-Panez case, this Court has stated that a refined objective standard can be considered here and that age can be relevant to the custody determination. We don't think that the fact that he was allowed to leave afterwards should be a relevant factor that this Court should consider. It is not what happened after he was questioned that is important. It is how he would have felt at the time that he was being questioned. Well, in regard to that, didn't they tell him at the outset that no matter what happens today, you will not be under arrest? You will be allowed to go home? That is true, Your Honor. He was told that. And it turned out to be correct. So you're right. You don't look at what happened all by itself. But it's also what he was told at the beginning. But in several of the other cases I would submit that we have cited, that was what was told to the defendant, and yet this Court still found that they were in custody at the time, even though they were told they were free to leave. I would like to reserve my time. Thank you. May it please the Court. My name is Carla Hodes Delor representing the United States in this matter. A review of the totality of the circumstances in this case indicate that the defendant was not at all in custody and therefore was not entitled to the Miranda warnings given to him. Is this the usual procedure? Doesn't the post office ordinarily tell people they're entitled to counsel? I don't know what the normal procedure is for the post office. But what happened is when the agent approached the defendant in the parking lot, said she'd like to speak with him and asked if he would come with her in the conference room, he went back to the conference room. After asking preliminary questions of name and address, she provided him with an acknowledgment of rights form, which ---- And that acknowledgment of rights doesn't say you have a right to an attorney. This seems very odd to me. That is correct, that the acknowledgment of rights form does not give the full Miranda warnings. I don't know why that is. But this form does state that the interview is strictly voluntary and he could leave at any time. And he ---- this form was read out loud. The defendant read it. And then he initialed each of the statements on the form. So he was well aware at the outset of all of this that this was completely voluntary and he could leave at any time. And I would disagree with defense counsel that when the agents first approached him in the car, the language they used to summon him was not a command or a show of force, as this Court has held in other cases, for instance, where they would tell the defendant, you need to follow me or you need to come with me. In those cases, this Court has found that that's a command or show of force. Here, Agent Cahill said, I would like to speak with you. Would you please come back with me in the post office? And, in fact, the defendant said, okay, and followed them, knowing questioning was going to ensue. Sotomayor Now, was the ---- did he give voluntary consent to the search of the car? Yes, he did. And the district court made specific findings regarding this. Down below, when they made a motion to suppress his statements, they also made a motion that his statements were involuntary and that the consent to search the vehicle was not voluntary. But, in fact, they said to themselves, well, we can impound the car. He has hesitated. He didn't want to give consent. And it's not until after they said, well, we can impound the car, that he gave it. So that doesn't sound exactly voluntary to me. Well, that is correct, that the agents did, when he hesitated, saying, it is my mother's car. I don't know if I should sign the consent form. And the agent did turn to the other agent and say, well, we can impound the car. And afterwards, he did give consent. But the district court made a specific factual finding on this and found that his will was not overborne by the agent saying we can impound the car to the other agent. And the district court made the factual finding that it wasn't coercive, and although it might have been inconvenient for him to leave that day without a car, he was not at all compelled to give consent to search the vehicle. But he did. And that's the important thing, is the district court made this finding. That's not an issue on appeal, either, is it? That is correct. Excuse me. I didn't mean to overspeak you. As I understand it, the only issue raised on appeal is whether the questioning was during what was custodial interrogation, such that a Miranda warning, full Miranda warning was required. You're exactly correct. And that is an important point to bring up, that whether consent was given to search the vehicle was not raised on appeal, and it's only the custodial Miranda warning. So that is the only issue before the Court, is whether he was in custody for Miranda purposes. But I do note in the — in considering the totality of the circumstances and giving deference to the factual findings, that one of the factual findings made in this case was the Court found that there was no coercive nature involved here. Well, I suppose, you know, there's a de novo review of whether or not a reasonable person would feel free to leave. And that could be viewed as a factual finding, but it's one we review de novo. So when the district court finds they said this to him, that's a factual finding that we defer to. But if the district court said, well, they said this to him and that wasn't coercive, I'm not so sure that's not part of our de novo review. Well, that is a — the — that is correct, but it is — it is just part of the totality of the circumstances in looking at this. And if you — even looking at everything de novo, the defendant still was not in custody, and he — a reasonable person would have felt that he was free to leave at any time during this investigation. In addition to the acknowledgment of rights form that was — that he went over with at the beginning, saying that it was voluntary, he was free to leave at any time, Agent Cahill testified that he was told several times that he was not under arrest, would not be put under arrest, regardless of what he said, and that he would be going home that day. So — What — what do you make of the fact that he was only 19 and, therefore, presumably less sophisticated in the world than — and maybe more easily intimidated by the — by the setting? The — Small windowless room, all of that. Well, it's — well, I — I disagree. Well, first of all, it was a large meeting room with windows. Oh, it did have windows. It did have windows, and it was a familiar environment. They did have meetings, and they testified that it had several large tables in the room. But the fact that he's 19, that is — the court is not limited to the five relevant factors. The court could consider other factors, but we're not dealing with a juvenile here where that — where, you know, a young age could be 14, could be more susceptible here. A 19-year-old could — just because the fact that he's 19 doesn't make him any more susceptible to — to police activity than someone who could be older. So, really, the age here isn't — isn't a relevant factor. If the — the other factors of the language used to summons him, the familiarity of where he was questioned, the duration of the detention, and the evidence against him, those are more the relevant factors, and his age really shouldn't play a role in this — in this thing. There was no evidence that he was some immature adult or juvenile, so. But the — overall, in looking at him, the — in this case, like I said, in looking at the acknowledgment of rights forms, the fact that he was told repeatedly he was not under arrest, would not be arrested, and could leave at any time, the fact that he was in a familiar environment, and the fact that he was not commanded or forced into going into the interview room, all of these factors weigh towards finding that he was never in custody and, therefore, not entitled to any Miranda warnings. If the Court has no further questions. Kagan. I don't believe that we do. Okay. Thank you. Then we would ask you to affirm his judgment and conviction. Thank you. Ms. McClellan. Your Honors, to address the question about the procedure, I believe what happened here was that Agent Cahill thought that Mr. Houck was a postal employee, and those are the — that branch of the Postal Inspector's Office researches those types of cases. And they use that form for administrative interrogations. And that was not, in fact, true. He was not an employee. One issue, if he had been an employee, he might have been able to ask for a union steward. The evidence at the hearing was that he was not a member of union because he was not an employee. When they encountered Mr. Houck, although they did not say, you must come with us, we would submit that it was — any reasonable person would have perceived this as a command. He was shown their — they showed their credentials to him. One of the agents did have — testified she had a weapon and that she had a bulge that someone could have seen. And there were two agents there that had him go back to the room. So we would argue, based on the totality of the circumstances, based on the length of the questioning, which was about an hour and a half, which in several cases the Court has found is more than sufficient to find, is custodial. And also, even though he was told that he was free to leave, there are many cases where a defendant was allowed to leave and not taken away in custody after the questioning, and yet they still found that he was in custody. In particular, the Craighead case, the Kim case, the Carter case, and the Baran-Panez case, in all of those cases the defendant was not arrested at the end of the questioning and was either arrested later or summoned to court like Mr. Houck was, and yet the Court still found that they were in custody. What did they say at the very end when he did actually leave? Is there a testimony on that or a record show? Well, one — Your Honor, I'm not sure what they said, although they did say that when he wrote out the statement that this was something that they would show to the judge. And also, one of the managers came in and saw him and took away his ID and his keys, and then he was allowed to leave. Thank you. Thank you, counsel. We appreciate your arguments. And U.S. v. Houck is submitted.
judges: Fletcher B. , Canby, Graber